**United States District Court**
**District of Massachusetts**

```
                          )
Andrelene Pataud,         )
                          )
          Plaintiff,      )
                          )
     v.                   )
                          )     Civil Action No.
United States Citizenship and  )     20-10690-NMG
Immigration Services, Boston   )
Field Office, et al.,     )
                          )
          Defendants.     )
                          )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Andrelene Pataud ("Pataud" or "plaintiff") alleges that defendants Michael J. McCleary and the U.S. Citizenship and Immigration Services, Boston Field Office ("USCIS Boston") (collectively, "defendants") unlawfully withheld documentation and denied her application for an adjustment of her immigration status in violation of the Administrative Procedure Act ("APA") and the equal protection provisions of the Due Process Clause of the Fifth Amendment to the U.S. Constitution ("Fifth Amendment"). Pending before the Court is defendants' motion to dismiss the complaint.

- 1 -

I.    **Factual Background**

Pataud is a citizen of Haiti who resides and works in Massachusetts.  In February, 2016, she filed an application for an adjustment of her immigration status to lawful permanent resident based on her 2014 marriage to Fenol Jean-Baptiste ("Jean-Baptiste"), a U.S. citizen.

In October, 2018, USCIS Boston sent Pataud a Request for Evidence ("RFE") in response to her application.  It noted that Pataud had allegedly claimed to be married to Joseph Stenio Plaisir ("Plaisir") in a Form DS-160 filed in May, 2012, seeking a non-immigrant visa.  The RFE requested evidence that her marriage to Plaisir had terminated or that she had never been married prior to her marriage to Jean-Baptiste.  In January, 2019, Pataud responded to the RFE by submitting documentation to prove that she was never married to Plaisir.  She also requested a copy of the Form DS-160 referenced in the RFE.

In February, 2019, USCIS Boston sent Pataud a second RFE seeking an updated Report of Medical Examination and Vaccination Record ("Medical Report") that had expired since the filing of her application.  The RFE also indicated that, based on documentation submitted by Pataud in response to the first RFE, USCIS Boston had determined that she was ineligible for an

adjustment of her immigration status unless the grounds for her inadmissibility were waived.  Pataud responded in April, 2019, submitting the updated Medical Report and again requesting a copy of the Form DS-160 referenced in the first RFE.

Defendants contend that, although both RFEs invited plaintiff to submit a Form I-601 to apply for a waiver of grounds of inadmissibility, she failed to do so.

USCIS Boston denied Pataud's application in May, 2019, on the ground that she had fraudulently misrepresented her marital status in her Form DS-160.  It also noted that she failed to submit an updated Medical Report as requested.  Another USCIS Boston decision denying Pataud's application was issued in October, 2019 ("the Final Decision").

## II.  **Procedural Background**

Pataud filed her complaint in this Court in April, 2020, seeking a writ of mandamus compelling defendants to provide her with her Form DS-160 (Count I) and reversal of the Final Decision pursuant to the APA and the Fifth Amendment (Counts II and III).  Pataud also seeks attorneys' fees pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412(d).

Defendants issued a Notice to Appear ("NTA") pursuant to 8 U.S.C. § 1229(a) in June, 2020, to begin removal proceedings

against plaintiff.  The NTA noted that the date and time at which she was required to appear before an immigration judge was "to be set."  A subsequent document sent to plaintiff scheduled the hearing for August 20, 2021.

Defendants filed their motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) in July, 2020, which plaintiff timely opposed.

## III. <u>Motion to Dismiss</u>

### A.  Legal Standard

In opposing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction. <u>Lujan</u> v. <u>Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).  If the defendant mounts a "sufficiency challenge," the court will assess the sufficiency of the plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in the plaintiff's favor. <u>Valentin</u> v. <u>Hospital Bella Vista</u>, 254 F.3d 358, 363 (1st Cir. 2001).  That being said, a plaintiff cannot assert a proper jurisdictional basis "merely on unsupported conclusions or interpretations of law." <u>Johansen</u> v.

- 4 -

United States, 506 F.3d 65, 68 (1st Cir. 2007) (internal citations and quotations omitted).

If, however, the defendant advances a "factual challenge" by controverting the accuracy, rather than the sufficiency, of the alleged jurisdictional facts, "the plaintiff's jurisdictional averments are entitled to no presumptive weight" and the court will consider the allegations by both parties and resolve the factual disputes. Valentin, 254 F.3d at 363.  The court has "broad authority" in conducting the inquiry and can, in its discretion, consider extrinsic evidence in determining its own jurisdiction. Id. at 363-64.

### B.   Application

Plaintiff claims that defendants unlawfully withheld from her the Form DS-160 and that their denial of her application for an adjustment of her immigration status was arbitrary and capricious in violation of the APA and the Fifth Amendment. Pataud seeks reversal of the denial of her application as well as a writ of mandamus ordering defendants to provide her with the Form DS-160.  Defendants move to dismiss the complaint on the grounds that: (1) the issuance of the NTA stripped this Court of jurisdiction under the APA; (2) plaintiff is not

entitled to a copy of the Form DS-160; and (3) plaintiff is not entitled to relief under the Fifth Amendment.

### 1.   Jurisdiction Under the APA

Defendants first contend that this Court lacks jurisdiction to consider plaintiff's claims under the APA because the issuance of the NTA began removal proceedings that render the Final Decision a non-final order that must be considered first by the immigration judge.  Plaintiff responds that defendants have failed to initiate properly removal proceedings against her and, therefore, their conclusion regarding this Court's jurisdiction lacks merit.  She asserts that defendants' NTA was deficient, citing Pereira v. Sessions, 138 S. Ct. 2105 (2018) for the proposition that a NTA must contain date and time information for removal proceedings to be valid.  She bolsters her position by noting that the Eleventh Circuit Court of Appeals applied Pereira in holding that a two-step notice procedure in which a deficient NTA is followed by a separate notice of a hearing time and date is insufficient to begin removal proceedings. See Perez-Sanchez v. United States AG, 935 F.3d 1148 (11th Cir. 2019).

Pataud's reliance on Pereira and Perez-Sanchez is, however, misguided.  As defendants point out, the holding in Pereira was

expressly limited to the effect of a NTA lacking time and place information on the "stop-time" rule.[1]  See Pontes v. Barr, 938 F.3d 1, 5-6 (noting that the Pereira Court "repeatedly emphasized the isthmian nature of its holding" in refusing to extend its reasoning beyond the context of the "stop-time" rule).  As a result, Pereira does not control where, as here, the "stop-time" rule is not at issue.

Furthermore, the First Circuit Court of Appeals has "repeatedly rejected" claims that immigration judges lack jurisdiction over removal proceedings in which NTAs fail to provide the date and time of removal hearings. Soto-Vittini v. Barr, 973 F.3d 20, 21 (1st Cir. 2020); United States v. Mendoza-Sánchez, 963 F.3d 158, 162 (1st Cir. 2020) ("[A]n undated [NTA] that complies with the regulations is effective to confer jurisdiction upon the immigration court.").  Once an immigration judge obtains jurisdiction over removal proceedings, the jurisdiction of other courts is extremely limited with respect to related claims.  First, the immigration judge maintains exclusive jurisdiction to hear any cause or claim arising from

---

[1] Nonpermanent residents subject to removal proceedings may be eligible to cancel their removal if they have remained in the United States for a continuous period of 10 years or more.  The "stop-time" rule embodied in 8 U.S.C. § 1229(d)(1)(A) provides that the period of continuous physical presence ends when the nonpermanent resident is served with a NTA under § 1229(a).

certain actions involving removal, including the initiation of removal proceedings. See 8 U.S.C. § 1252(g).  Second, only final orders of removal are subject to judicial review. See 8 U.S.C. § 1252(b)(9).

When removal proceedings are ongoing, the denial of an adjustment application is no longer considered "final" because it may be reviewed by the immigration judge. See Gao v. Napolitano, 2009 WL 961243, at *2 (D. Mass. 2009) (explaining that administrative remedies as to the denial of an adjustment application are not exhausted when removal proceedings have commenced); see also Jama v. Dep't of Homeland Sec., 760 F.3d 490, 497 (6th Cir. 2014) ("[D]enial[s] of a status adjustment application are not 'final agency actions' reviewable in district court under the APA" when removal proceedings are ongoing).

The NTA issued by defendants, though lacking the specific date and time of plaintiff's hearing, is sufficient to confer jurisdiction upon the immigration judge as to Pataud's removal proceedings.  Because she may challenge the denial of her application through those proceedings, see 8 C.F.R. § 1245.2(a)(5) (applicant "retains the right to renew his or her application in [removal] proceedings"), she has not yet

- 8 -

exhausted her administrative remedies and the Final Decision is
no longer a final order capable of judicial review. See Ansaldo
v. United States, 2018 WL 1084144, at *2 (D. Colo. 2018)
("Because [plaintiff] will have the opportunity to renew her
application for adjustment of status, . . . [the denial of her
adjustment application] is an intermediate step in her removal
process and is not yet final under the APA."). Accordingly,
this Court is without jurisdiction to consider plaintiff's claim
under the APA.

### 2. Entitlement to Form DS-160

Plaintiff seeks a writ of mandamus ordering defendants to
set aside the Final Decision and provide her with the Form DS-
160 that contains the alleged fraudulent misrepresentation that
ultimately led to the denial of her application. Defendants
respond that plaintiff is not entitled to a copy of the Form DS-
160 and that her claim is moot because she already possesses a
redacted copy of the document.

To obtain mandamus relief, a petitioner must make the
requisite "extraordinary showing." In re Tsarnaev, 775 F.3d 457,
457 (1st Cir. 2015). A petitioner must show a clear entitlement
to such a writ, that there is no other adequate source of relief

and that the balance of equities weighs in favor of issuance of the writ. See In re Bulger, 710 F.3d 42, 45 (1st Cir. 2013).

The regulation cited by plaintiff requires that an applicant for adjustment of immigration status

> shall be permitted to inspect the record of proceeding
> which constitutes the basis for the decision . . ..

8 C.F.R. § 103.2(b)(16).  The regulation further provides that, if a decision adverse to the applicant is based upon derogatory information, the applicant "shall be advised" of that fact and shall be

> offered an opportunity to rebut the information and present
> information in his/her own behalf before the decision is
> rendered.

§ 103.2(b)(16)(i).

Plaintiff's mandamus claim with respect to setting aside the Final Decision is deficient, however, because she has not demonstrated that there is no other adequate source of relief. In fact, she may seek reconsideration of the denial of her adjustment application in the removal proceedings before an immigration judge. See Gao, 2009 WL 961243, at *2.

Furthermore, plaintiff's mandamus claim with respect to the Form DS-160 is moot.  Even if defendants were under a legal duty to provide Pataud with a copy of the Form DS-160, she currently

possesses that document.  Although Pataud insists that her
mandamus claim should survive because the copy in her possession
is partially redacted, she cites no case law to support that
contention.  The applicable regulations do not afford an
applicant the right to inspect fully unredacted copies of
documents that otherwise provide the basis for an adverse
decision.  Accordingly, plaintiff's request for a writ of
mandamus will be denied as moot.

### 3.  Relief Under the Fifth Amendment

Defendants, apparently misinterpreting plaintiff's Fifth
Amendment claim as one of procedural due process, have moved to
dismiss the constitutional claim under Fed. R. Civ. P. 12(b)(1).
After Pataud clarified in her opposition that she is alleging an
equal protection violation under the Fifth Amendment, defendants
adjusted their argument to assert that plaintiff makes
"conclusory allegations . . . that this Court need not accept,"
citing Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Because
defendant's contentions with respect to plaintiff's
constitutional claim are more aptly considered under Fed. R.
Civ. P. 12(b)(6) than 12(b)(1), this Court will treat the
subject motion as one to dismiss for failure to state a claim.
See Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410

F.3d 41, 46 n.6 (1st Cir. 2005) (treating a motion to dismiss under Fed. R. Civ. P. 12(b)(1) as a motion under Fed. R. Civ. P. 12(b)(6) where appropriate).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 228 F.3d 1127 (1st Cir. 2000). Although a court must accept as true all the factual allegations in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id.

To state a claim of an equal protection violation under the Fifth Amendment, a plaintiff must show that the alleged misconduct

results in members of a certain group being treated
differently from other persons based on membership in that
group.

Omran v. United States, 2016 U.S. Dist. LEXIS 190990, at *29 (D.

Mass. 2016) (internal citation and quotation omitted).  The

facts pled must "raise a plausible inference that an 'invidious

discriminatory purpose was a motivating factor'" in the

challenged decision. Dep't of Homeland Sec. v. Regents of the

Univ. of Cal., 140 S. Ct. 1891, 1915 (2020) ("Regents") (quoting

Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429

U.S. 252, 266 (1977)).  Evidence that may demonstrate a

discriminatory motive includes a disparate impact on a

particular group, "[d]epartures from the normal procedural

sequence," and "contemporary statements by members of the

decisionmaking body." Village of Arlington Heights, 429 U.S. at

266-68.

    Pataud has not alleged facts sufficient to raise a

plausible inference of a discriminatory motive in the decision

to deny her application.  While she cites numerous comments by

high-level government officials arguably evincing bias, Pataud

establishes no connection between those speakers and the

decisions made by the USCIS Boston.  In Regents, the Court held

that the respondents' equal protection claim failed where the

respondents did not identify any statements of relevant actors

that would give rise to an inference of discriminatory intent but instead relied upon statements by President Trump that were "remote in time and made in unrelated contexts." 140 S. Ct. at 1916.

Here, plaintiff similarly relies on statements by President Trump and senior advisor Stephen Miller in unrelated contexts but cites no statements by actors with direct control over her application, such as defendant Michael J. McCleary, the director of USCIS Boston who signed the Final Decision.  Furthermore, she has not identified any similarly situated individual who received more favorable treatment than she did in the application process.  Accordingly, plaintiff has not stated a plausible equal protection claim.

### ORDER

For the forgoing reasons, the motion of defendants USCIS Boston and Michael J. McCleary to dismiss the complaint (Docket No. 14) is **ALLOWED**.


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 20, 2020

- 14 -